IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ABIRA MEDICAL LABORATORIES, LLC, | § § | |
| *Plaintiff* | § § | SA-24-CV-00578-XR |
| -vs- | § § § | |
| WELLMED MEDICAL MANAGEMENT, INC., | § § § | |
| *Defendant* | § § | |

## ORDER ON MOTION TO DISMISS

On this date, the Court considered Defendant WellMed Medical Management, Inc's ("WellMed") motion to dismiss (ECF No. 18), Plaintiff Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics' ("Genesis") response (ECF No. 19), and WellMed's reply (ECF No. 21). After careful consideration, and the arguments made by the parties on September 10, 2024, the Court **GRANTS** the motion.

### BACKGROUND

This case is a dispute over payment for medical testing services. Genesis is a medical testing laboratory for clinical, pharmacy, genetics, addiction rehabilitation, and COVID-19 testing. *Id.* ¶ 8. WellMed is a health maintenance organization that operates a "network of doctors, specialists, and other medical professionals that provide care for more than 1 million older adults [its subscribers]." *Id.* ¶¶ 4, 10. Genesis alleges that WellMed also provides insurance to its subscribers. *Id.* ¶¶ 8–9. Genesis claims that WellMed is responsible for paying the cost of certain laboratory testing services it incurred for WellMed's subscribers.

Genesis operates under the following business model. First, a medical service provider takes a patient's specimen (after a referral by a doctor). *Id.* ¶ 8. Second, this service provider sends

1

the specimen to Genesis for testing by requisition. *Id.* A requisition contains an assignment of benefits from a patient to Genesis, such that Genesis can collect as the patient from the insurer. *Id.* ¶ 9. Third, Gensis runs the tests. *Id.* ¶ 8. Fourth, Genesis bills the cost of the test to either the patient's third-party insurer (here, WellMed), Medicare or Medicaid, the medical service provider, or directly to the patient.[1] *Id.* ¶ 8. Genesis sent WellMed the bills for hundreds of tests between 2017 and 2021 because the patients were insured by WellMed. *Id.* ¶ 9. Genesis claims WellMed failed to pay or underpaid these claims to the tune of $443,790.43. *Id.* at 12.[2]

This action followed. Genesis filed its Original Petition in the 224th District Court in Bexar County, Texas, on April 29, 2024. ECF No. 1-2. Genesis asserted state law claims against WellMed for breach of contract, quantum merit, and account stated. On May 28, 2024, WellMed removed the case to this Court under complete Employee Retirement Income Security Act ("ERISA") preemption,[3] which "converts a state law civil complaint . . . into 'one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir. 2009) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)). ECF No. 1. Genesis did not contest removal.[4] On July 6, 2024, Genesis filed an amended complaint ("FAC") which added a claim for violations of the Families First Coronavirus

---

[1] In this model, WellMed may wear multiple hats. In addition to being the insurer, a WellMed doctor may be the one who requests the test or the provider who takes the specimen. *See* Hearing Transcript, 26:9–10 (Genesis' counsel stating that "[t]he patients go into WellMed"). There are no facts alleged, however, as to the specifics of these relationships here, including what relationship the doctors or medical service providers have with WellMed.

[2] Genesis is out-of-network for WellMed. *Id.* ¶ 11. At the hearing, WellMed's counsel referenced this as the reason WellMed did not pay these claims. *See* Hearing Transcript, at 34:4–5.

[3] Complete ERISA preemption differs from conflict ERISA preemption, which provides "merely an affirmative defense and does not operate to confer subject matter jurisdiction." *Encompass Off. Sols., Inc. v. Ingenix*, 775 F. Supp.2d 938, 950 n.3 (E.D. Tex. 2011).

[4] The Court notes that the parties are also diverse: Genesis is a resident of New Jersey and New York and WellMed is a resident of Texas. ECF No. 14 ¶¶ 3–4.

Response Act and the Coronavirus Aid, Relief, and Economic Security Act.[5] On June 17, 2024, WellMed moved to dismiss Genesis' claims with prejudice. The matter is now ripe for consideration.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery") (internal quotation marks and citations omitted).

---

[5] Gensis abandoned these claims because neither statute provides a private right of action. ECF No. 19 at 2.

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

II. <u>Analysis</u>

A.  ERISA Preemption

WellMed claims that all of Genesis' claims are completely preempted by ERISA.[6] In other words, they fall within the scope of ERISA's civil enforcement provisions, § 502(a), as amended, 29 U.S.C. § 1132(a). If so, Genesis cannot assert its state law claims and would need to resort to available remedies under ERISA. At this stage, taking Genesis' allegations as true, the Court disagrees with WellMed because the patients' benefits assigned to Genesis are not ERISA benefits.

---

[6] WellMed conflates complete and conflict preemption. Because WellMed consistently refers to Genesis' claims as being "completely preempted," ECF No. 18 at 4, 9, 12, the Court addresses only whether Genesis' claims are subject to complete preemption under § 502(a). To the extent WellMed seeks to raise a conflict preemption argument under § 514 that Genesis' state law claims "relate to" an ERISA plan, that argument also fails at this stage because it is an affirmative defense under which WellMed carries the burden, *see Encompass Office Solutions, Inc.*, 775 F. Supp.2d at 950 n.3, and WellMed has not put forth a single ERISA plan at issue nor any evidence that the claims at issue here "relate to" one. *See infra* p. 7.

**Regulated Benefit Plans.** ERISA comprehensively regulates, among other things, employee welfare benefit plans. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44 (1987). It defines an "employee welfare benefit plan" to include:

> "... any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment ..." 29 U.S.C. § 1002(1).

**ERISA's Enforcement Clause.** One of ERISA's explicit purposes is to "protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing appropriate remedies, sanctions, and ready access to the Federal courts." *Pilot Life Ins. Co.*, 481 U.S. at 44 (citing 29 U.S.C. § 1001(b)). To this end, ERISA Section 502(a)(1)(B) provides a civil enforcement provision for plan participants. It states that a participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 209 (2004). Because ERISA is intended "to provide a uniform regulatory regime over employee benefit plans[,]" *Davila,* 542 U.S. at 208, this civil enforcement remedy is intended to be "the exclusive vehicle for actions by ERISA-plan participants." *Pilot Life,* 481 U.S. at 52.

**ERISA's Complete Preemption Clause.** State law claims that duplicate or fall within the scope of the statutory remedy are completely preempted by ERISA. *See Lone Star OB/GYN Associates,* 579 F.3d at 529. In *Davila*, the Supreme Court established a two-part test for determining when state law claims are completely preempted: when (1) an individual, at some

5

point in time, could have brought the claim under § 502(a), and (2) there is no other legal duty independent of ERISA or the plan terms that are implicated by the defendant's actions. 542 U.S. at 210. The Supreme Court has repeatedly found that state common law causes of action asserting improper processing of a claim for benefits under an employee benefit plan regulated by ERISA are completely preempted by the Act. *See Davila,* 542 U.S. at 214; *see also Pilot Life,* 481 U.S. 41 (holding that state law claims asserting improper processing of a claim for benefits are preempted by the Act).

WellMed fails prong one of *Davila* because, as alleged, the patients themselves could not have sought payment under § 502(a) since the plans are not governed by ERISA. That Genesis seeks these payments as the assignee of the patients' rights does not alter the analysis. Genesis alleges that the patients' rights stem from WellMed's insurance offering, not insurance provided by the patients' employers. *See* ECF No. 14 ¶ 8 ("requisitions . . . on behalf of [WellMed's] insureds/subscribers/members"). WellMed is not the patients' employer but a private company. It is not the case that "the bare purchase of an insurance policy . . . exclusively establish[es] the existence of an ERISA plan," *Mem'l Hosp. System v. Northbrook Life Ins.,* 904 F.2d 236, 242 (5th Cir. 1990) (citing *Taggart Corp. v. Life & Health Benefits Admin.*, 617 F.2d 1208, 1211 (5th Cir. 1980), and "state law claims relating to plans not governed by ERISA cannot be preempted by ERISA." *Encompass Office Solutions, Inc.*, 775 F. Supp.2d at 950. WellMed's citations in support of its preemption argument deal are not on point because they deal with instances where the benefits assigned *were* governed by an ERISA plan—whether admitted in the complaint or gleaned through evidence at summary judgment—or cases where the state law claims related to an ERISA plan for conflict preemption. ECF No. 18 at 5–6.

WellMed argues that because this case involves "more than several hundred patients insured by the Defendant," "[a]t least some of these plans are employer-sponsored health insurance plans." ECF No. 21 1–2. Therefore, according to WellMed, at least some of the patients' claims could have been brought under ERISA's civil enforcement scheme. This is too speculative, and it would be improper to draw this inference in favor of WellMed at this stage. Even if the Court did take judicial notice that "[t]he overwhelming majority of individuals in the United States covered by private health insurance are covered by employment-related health insurance policies that are provided by the individual's own employer or by the employer of a family member," *id.* at 2, that does not imply that the plans under which Genesis seeks reimbursement from are such plans. Absent evidence of the plans themselves—which WellMed did not introduce—the Court cannot conclude that complete ERISA preemption applies.[7]

Because complete preemption requires that both *Davila* prongs be met, and the Court has found that prong one has not been met, the Court need not analyze the claims under prong two. The Court now turns to the merits of Genesis' state law claims.[8] They all fail.

### B. Genesis' Breach of Contract Claim Fails

Genesis asserts a breach of contract against WellMed under the theory that the patients' assignment of payment benefits created an obligation of WellMed to pay for the testing incurred by the patients. ECF No. 14 ¶ 15(b). While Genesis can sue for the recovery of benefits based on

---

[7] Genesis' counsel pointed to this at the hearing: "we don't really know quite frankly at this stage of the game" if there are employee health benefit plans at issue. Hearing Transcript, at 27:16–20.

[8] The Court has an independent obligation to assess the basis for subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1999). Because the Court finds there is no complete ERISA preemption at this stage, the Court lacks federal question jurisdiction under 28 U.S.C. § 1331. *See Hubbard v. Blue Cross & Blue Shield* Ass'n, 42 F.3d 942, 945 (5th Cir. 1995) ("[i]f neither claim is preempted by ERISA, then the district court lacks subject matter jurisdiction, because both claims arise under state law and there is no diversity of citizenship"). Yet the parties here are diverse, *see supra* note 5, so the Court can proceed under 28 U.S.C. § 1332. Of course, that complete preemption does not apply at the pleading stage does not foreclose the possibility that it can be established upon a more developed record.

7

these assignments,[9] the claim still fails because Genesis does not allege a specific contractual provision breached, nor does it allege a contractual relationship between the parties.

To state a breach of contract claim, a plaintiff must plead facts showing: "(1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach." *Oliphant Fin., LLC v. Patton,* No. 05–07–01731–CV, 2010 WL 936688, at *3 (Tex. App–Dallas Mar. 17, 2010, pet. filed). "A breach of contract ... only occurs when a party fails or refuses to perform an act that it expressly promised to do." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F.Supp. 2d 587, 602 (N.D. Tex. 2014) (citations omitted). "[A] plaintiff must identify a specific provision of the contract that was allegedly breached." *Id.* (citations omitted). Thus, it requires an "allegation of a contractual relationship between the parties, and the substance of the contract which supports the [plaintiff's] right to recover." *Bayway Services, Inc. v. Ameri-Build Const., L.C.*, 106 S.W.3d 156, 160 (Tex. App.–Houston [1st Dist.] 2003, no pet.).

Genesis concedes there is "no contractual relationship between [Genesis] and [WellMed]." ECF No. 19 at 9. Even if there were such a relationship by way of the assignments, Genesis fails to allege the substance of the contract, much less a specific provision that was allegedly breached or one that entitles it to payment. Genesis argues that it states a breach of contract claim because "given the assignments of benefits, contractual rights to pay for services rendered flowed therefrom, establishing the existence of contracts." ECF No. 17 at 17. But this argument relies on an alleged general obligation to pay, without tying it to a specific contractual provision, and is not enough to plead a breach of contract claim. Indeed, numerous district courts have dismissed

---

[9] It is well established in the Fifth Circuit that a healthcare provider may obtain derivative standing to enforce a beneficiary's claims by virtue of a valid assignment. *See Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan,* 426 F.3d 330, 333–34 (5th Cir. 2005). WellMed does not challenge the assignments.

analogous breach of contract claims brought by Genesis against insurance companies for this exact reason. *See*, e.g., *Abira Med. Labs., LLC v. State Farm Mut. Auto. Ins.*, No. 23-CV-03866-GC, 2024 WL 3199835, at *2-3 (D.N.J. June 26, 2024) ("it is not enough for Plaintiff to generally allege that Defendant breached a contract by failing to pay for services pursuant to some currently unidentified agreement with some unidentified claimants").

### C. Genesis' Quantum Meruit Claim Fails

Genesis' quantum meruit claim rests on the allegation that Genesis conferred a benefit upon WellMed's subscribers, which in turn conferred upon WellMed a windfall of nonpayment of the value of testing services performed by Genesis. ECF No. 14 ¶ 17(c). It claims that by not paying for the testing services rendered, WellMed enriched itself at Genesis' expense. *Id.* ¶ 17(d).

To recover under quantum meruit, a plaintiff must prove that: "(1) valuable services were rendered or materials furnished; (2) for the defendant; (3) the services and materials were accepted by the defendant; and (4) the defendant was reasonably notified that the plaintiff performing the services or providing the materials was expecting to be paid. *Texas Medicine Resources, LLP v. Molina Healthcare of Texas, Inc.*, 659 S.W.3d 424, 436 (Tex. 2023) (citing *Hihll v. Shamoun & Norman, LLP*, 554 S.W.3d 724, 732–33 (Tex. 2018)). To establish the second element, it is insufficient that a defendant merely benefitted from plaintiffs' services. *Id.* Instead, a plaintiff's "efforts must have been undertaken *for* the person sought to be charged." *Id.* (citations omitted).

Genesis' quantum meruit claim fails. Even though valuable services were rendered—the testing itself—the benefit was not for WellMed, but for the patients themselves. Although there was previously a split among courts as to whether a quantum meruit claim against health insurance companies could be maintained based on allegations that the providers performed services solely

9

for the health insurance companies insured,[10] this was put to rest by the Texas Supreme Court in *Texas Medicine Resources, LLP v. Molina Healthcare of Texas, Inc*. There, emergency room doctors brought quantum meruit claims against a health maintenance organization and argued that by treating the insureds, they directly conferred a benefit on the insurer (the health maintenance organization) itself. 659 S.W.3d at 436. The Texas Supreme Court held that the doctors could not state a claim for quantum meruit because

> [s]erving a defendant's *customers* is hardly the same as serving the defendant *itself*.... Recovery in quantum meruit cannot be had from an insurer based on services rendered to an insured, because those services aren't directed to *or* for the benefit of the insurer. As our sister district courts have repeatedly pointed out, "a ripened obligation to pay money to the insured ... hardly can be called a benefit."

*Id.* at 437 (citations omitted).

Because Genesis' quantum meruit theory is no longer viable under Texas law, its fails.[11]

### D. Genesis' Account Stated Claim Fails

Genesis asserts its account stated claim based on (i) the alleged contractual obligations that arose through the assignment of benefits, (ii) its performance of these obligations, and (iii) WellMed's supposed breach of its own obligations by failing to pay for the testing. ECF No. 14 ¶ 14. This merely "recast[s]" its breach of contract claim as an account stated claim, which "Texas does not allow." *Capitaine v. PNC Bank N.A.*, No. 2:23-CV-336, 2024 WL 1481059, at *5 (S.D. Tex. Mar. 22, 2024) (citations omitted). In any event, it likewise falls short.

---

[10] *Compare Encompass Off. Sols., Inc.* 775 F. Supp. 2d at 966 ("Even if [the health insurance company] received some benefit as a result of [the healthcare provider] providing medical services to its insureds ... [the healthcare provider's] services were rendered to and for its patients, not [the health insurance company]."); *with El Paso Healthcare System, LTD v. Molina Healthcare of New Mexico, Inc.*, 683 F. Supp. 2d 454, 461 (W.D. Tex. 2010) (holding that the insurance company "did receive the benefit of having its obligations to its plan members . . . discharged"). In *El Paso Healthcare System*, the court's reasoning rested heavily on the fact that the insurer had statutory obligations to incur the costs. *See* 683 F.Supp.2d at 461–62. Here, Gensis does not allege any statutory obligations of WellMed to do so.

[11] This claim is dismissed with prejudice because it would be futile to replead.

"The elements of an account stated claim include: (1) transactions between the parties gave rise to indebtedness of one to the other; (2) an agreement, express or implied, between the parties fixed an amount due; and (3) the one to be charged made a promise, express or implied, to pay the indebtedness." *Nguyen v. Citibank N.A.*, 403 S.W.3d 927, 930 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citation omitted). The type of transactions that have historically been asserted for account stated claims are instances when "parties have an ongoing business relationship with a series of transactions back and forth as part of an open running account" or "when two parties owe each other liquidated debts created by separate, independently enforceable transactions and the parties strike a balance between them." *Advanced Gas & Equipment, Inc. v. Airgas USA, LLC*, No. 14-16-00464-CV, 2017 WL 3442430, at *3 (Tex. App.-Houston [14th Dist.] Aug. 10, 2017, pet. denied); *see also* 29 Williston on Contracts § 75:56 (4th ed.) ("[t]he essential elements of an account stated are (1) previous transactions between the parties establishing the relationship of debtor and creditor . . . .").

Genesis does not allege any transactions of these sorts between itself and WellMed. Genesis admits it has no contractual relationship with WellMed. The only allegations of an interaction between Genesis and WellMed are that Genesis submitted the claims to WellMed. *See* ECF No. 14 ¶ 9. This is unilateral action by Genesis, not a transaction between the parties. *See Transaction*, Merriam-Webster, https://www.merriam-webster.com/dictionary/transaction (defining transaction as "an exchange or transfer of goods, services, or funds"). That Genesis is an out-of-network provider also "suggests it had no prior relationship with [WellMed]." *Premier Orthopaedic Associates of S. NJ, LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 496 (D.N.J. 2023) (dismissing account stated claim under analogous New Jersey law by out-of-network provider to recover costs from an insurer for providing medical treatment to one the insurer's

11

insured). Other district courts have dismissed similar claims for account stated where an out-of-network healthcare company "provided a service to *Patient*, not [the insurer]." *Bergen Plastic Surgery v. Aetna Life Ins.,* No. 22-CV-227-SDW-JSA, 2022 WL 4115701, at *3 (D.N.J. Sep. 9, 2022) (emphasis in original). Here, Genesis provided the testing service to WellMed's subscribers, not WellMed.

Even if there were transactions between Genesis and WellMed, Genesis fails to state an account stated claim it does not allege "agreement on the amount of damages by both parties." *Speedway Loans, Inc. v. Hassan*, 4:21-CV-575-SDJ, 2022 WL 3567180, at *6 (E.D. Tex. Aug. 18, 2022); *see also Paine v. Moore*, 464 S.W.2d 477, 480 (Tex. Civ. App.—Tyler 1971, no writ) ("An account stated requires an absolute acknowledgment or admission of a sum certain by the debtor to the creditor."). There are no allegations regarding the amount WellMed agreed to pay for Genesis' services, only the costs Genesis incurred. This is fatal to an account stated claim. *See Bergen Plastic Surgery*, 2022 WL 4115701, at *3 (dismissing account stated claim because "degree to which Defendant agreed to cover the out-of-network costs of Patient's care is not stated in the complaint"). While "[a]pproval of an account can be inferred by a party's silence if the account is rendered and retained without objection for a reasonable time after full opportunity to object," *Cont'l Cas. Co. v. Dr. Pepper Bottling Co. of Tex., Inc.*, 416 F. Supp. 2d 497, 505 (N.D. Tex. 2006), there are no facts from which the Court can plausibly infer an agreement, express or implied, by WellMed to pay these amounts. That WellMed partially paid some claims, ECF No. 14 ¶ 11 ("Defendant failed to pay (and/or underpaid)"), suggests it refused to pay the others, not that it agreed to do so.

## CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss Plaintiff's claims (ECF No. 18) is **GRANTED**, and Plaintiff's claims against Defendant WellMed are **DISMISSED**, with leave to replead within 30 days from the date of this Order. Should Plaintiff choose not replead, a final judgment pursuant to Rule 58 will issue after this time expires.

It is so **ORDERED**.

**SIGNED** this 12th day of November, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE